Good morning, Your Honor. May it please the court, with me today is Rebecca Patterson, my partner and Attorney General Alex Ritchie of the San Carlos Apache Tribe. I'd like to The Indian Health, under the Indian Health Care Improvement Act, the Indian Health Service carries out a federal health care program for American Indians using a mix of appropriated funds and third-party revenue dollars. That is the federal program that the San Carlos Apache Tribe contracted to operate under the Indian Self-Determination Act. In return, the government committed to pay contract support costs to carry out that federal program. Now the tribe contends that the contract support costs, overhead costs, are due on the entire federal program. The government asserts, no, it's due on the appropriated portion of the program, but not the portion of the program that's funded with third-party revenues that the government would be using if it were still operating the program. The government's position cannot be sustained under the contract, under the statute, or the controlling rule of statutory construction. Let me begin with the contract. The contract, page 86 of the excerpts of record, tells us exactly what's going on with respect to third-party revenues. It says the contractor is required to maintain an efficient billing system, this is at 086, to maximize third-party revenues. You don't see that in many contracts. That's in this contract. And the third-party payers are specified, Medicare, Arizona's version of Medicaid, the private insurance, and of course IHS's own contract health care system, currently called Can I ask, are you asserting that either the contract or the statutes require the tribe to pursue these third-party... Absolutely they require it. That's the term of the contract, and with good reason, because Congress in the Indian Health Care Improvement Act expected the Indian Health Service, and so also the tribes, to bill third-party revenue payers because appropriations were simply insufficient to provide the need across Indian country. This is a mandate that was put into Title IV of the Indian Health Care Improvement Act. Today it appears in 1621. Other provisions, 1621E. The shoveling of that money into the program is 1621F and, as I say, 1641D. I'm sorry, go ahead. No, your honor. Well, just the government does dispute this. I mean, there's no dispute that it's authorized, certainly authorized, the tribe is authorized to go get these monies, but I'm just focusing on the required point. The government says no, that's not correct? That's right. The government disputes that, but the government doesn't read the contract. But where is it in the contract? The contract says that... What provision? Objective 1D on page 86. The contractor is required to maintain an efficient billing system to maximize third-party revenues. And on the bottom, under Objective 2F of the same page, to generate maximum third-party revenues for all eligible patient transports. This is the part of the contract, your honor, that deals both with ambulance transports out from San Carlos, as well as non-emergent transports to see physicians. I would add, of course, as we addressed in the brief, also 1623, which provides that appropriated dollars are a payer of last resort, your honor has seen both sides of that. Yeah, I think the only reason I'm asking about this is, if we were to agree with the government on this particular, this little bitty point, about whether pursuing third-party revenues was required, do you lose at that point? No, I don't think it matters. Okay, that's what I thought, but people were fighting over it and I didn't understand. The funny thing about it, I apologize, your honor, I didn't want to speak over you. No, I don't think it matters at all. Well, the Indian Health Care Improvement Act creates the program and it authorizes the funding for the program. It authorizes appropriations, it authorizes the billing of third-party payors. Together, those two bodies of money come together and from that you provide the program authorized by Congress. And tribes are seeking no more or less than what Congress authorized in the Indian Health Care Improvement Act, that it would contract under the Indian Self-Determination Act. Can I just confirm one thing, and that is that the income that comes in from these third parties, it must be used on the services provided under the contract, is that correct? Absolutely. It's not only provided for under the Indian Health Care Improvement Act, it's provided under the Indian Self-Determination Act itself. 5325M says that the collections come in carrying out the contract and then the expenditures must be to satisfy the purposes of the contract. So 5325M, which of course is incorporated into the contract, closes the loop. We have a system of total health care funding, appropriated dollars, third-party revenue dollars, they come in through the contract and they have to go out under the contract. There's no getting around it. And this is not an odd scenario, it's the exact same thing the Indian Health Service does. So again, we seek only to replicate what the Indian Health Service would be doing if it were collecting the funds, Your Honor. Okay, but I thought the government was saying that you were not necessarily required to use all of the money you got from the third-party payers on the specific health services that are specified under the contract. In other words, because you just used the term, which I think has to be used, I don't know what, to further the purposes of the contract. But anyway, I thought that they were making the argument that you were allowed a little bit more flexibility in terms of what you used the money for, and that that created part of the problem, that it didn't all have to be directed to the specific services under this contract. That, too, is a situation that is identical as between tribes and the Indian Health Service. The Indian Health Service has some flexibility in how it's going to marshal these new funds that it gets from third-party payers to carry out the general mission of the Indian Health Service, as authorized by Congress. Tribes also have some discretion, yes, as how to manage it. Are they going to put this money into the ambulances or the non-emergent patient transport? Are they going to buy a new ambulance because the old one is no longer working? I mean, there's some, yes, flexibility to how it's used, but it must be used to carry out the contract. And that's the linchpin of the case. The government's effort— To get a better sort of contextual understanding, how much is at stake for the contract support costs here for this? I didn't— What are we talking about in terms of dollar amounts? Well, we never got to that in the case, but if you figure— What you must have thought about. Right. In contract support cost payments, if memory serves me right, there was several hundred thousand dollars that were due and were paid, and there was more than double that that was due on the portion of the program that was funded with third-party revenues, and the government did not pay that. The government actually was short on the first part, but we settled those counts and that part of the case was dismissed. But the government paid nothing on the second part. And this turns out to be very important. Give me a moment, Your Honor. When the government runs the appropriated part of the operation and the third-party revenue part of the operation, they're mixing the money together. When they do that, they benefit from the vast overhead that the federal government, fortunately, provides to any federal agency, whether it's judiciary or any other branch. So you have the Office of Personnel Management. You sign up on your SF-171 to apply for employment. You've got the General Services Administration doing all the wonderful things it does with respect to buildings and property and such, procurement activities. The Justice Department will prosecute claims for you or defend claims against you. The Office of General Counsel at HHS is outside of IHS. It provides advice to IHS. All of these overhead functions are the same functions that tribes have to perform, but they don't have access to GSA, to OPM, to the Department of Justice, to OGC, to the National Archives to store their records. So tribes have to pay for that. Fine. That was the purpose of contract support costs. Recall back in 1987 there was a Senate report in amending the statute that said the single greatest impediment to the success of tribal self-determination was a failure to pay indirect costs, which are contract support costs. Eighty percent of contract support are indirect. Because there was no mechanism in the statute for paying those funds, so Congress created contract support costs. And today it's an unlimited line item in the appropriation. Your Honors are clear. The payment of contract support costs doesn't come out of the agency's budget. It doesn't come out of agency programs. A ruling in favor prospectively doesn't mean less money for substance abuse programs for other tribes because it's a separate, indefinite appropriation that has been since fiscal year 2015 in the wake of the Salazar v. Rama decision. And, of course, any back recovery comes out of the judgment fund, so it too doesn't at all burden the Indian Health Service. The government's proposition requires reading into the statute an exception that isn't there. And I did want to take a moment to visit with your Honors about the statute. The Indian Self-Determination Act covers a vast array of responsibilities and burdens and limitations on tribes. It describes what happens when a tribe operates these programs, services, functions, and activities. Excuse me, I just need some water. Your Honors, I'm sure, and I know, are familiar with the Federal Tort Claims Act. It applies to acts or omissions that occur in the course of carrying out an Indian Self-Determination Act contract. I've been doing this business for a long time, seen a lot of FDCA cases. Nobody ever asks, was the doctor or the nurse that is alleged to have committed malpractice being paid at that time with appropriated dollars or third-party revenue dollars? It doesn't happen. It's not a relevant question. You're carrying out the contract. It doesn't matter which of those two sources is at issue. The same thing with drugs. Tribes purchase drugs under the Federal Supply Schedule. There's a special contract with certain pharmaceutical manufacturers. And nobody asks, oh, are you buying those drugs with appropriated dollars? Are you buying those drugs with third-party revenues? And perhaps the most important for the United States, I would think, Section 5330 authorizes the government to come in and take back a contract. Rare. If the contractor is carrying out the program in a way that is causing harm to public health or patients, nobody would ask in that setting, oh, is the contractor only using third-party revenue dollars? Oh, then we don't need to take over the contract. I mean, that would be an absurd construction of the Indian Self-Determination Act, and nobody supposes it. And I'm sure my friends on the other side would agree. It's only when it comes to contract support costs that they say, oh, no, no, the third-party revenue portion of the contract is not part of the contract at all. It's actually outside the contract. That makes no sense. Now, if Congress had said that, we'd live with it. But what did Congress say? It said 5325A3, the operation of the federal program that is the subject of the contract. It doesn't say operation of the portion of the federal program funded with agency appropriations. It doesn't say operation of the portion of the federal program funded by the secretary under subsection A. So maybe you can respond to the D.C. Circuit's decision. That's obviously the one that we're going to have to disagree with if we rule for you. So the D.C. Circuit read that same language you were just quoting from as actually doing exactly the opposite of what you just suggested, right? So what is wrong with the rationale? What's wrong is that the D.C. Circuit reads an exception into this language that isn't here. And it's doubly wrong because the D.C. Circuit doesn't heed the Supreme Court's admonition, with all respect to the Court, that the government's position can only prevail if it's clearly required by the text of the language. And as we mentioned in the briefs, this is not a flexible judicial canon of construction. It's a mandate from Congress that the courts and the lawyers alike must apply. There is no room for the argument that the language federal program is the subject of the contract means something other than the federal program. How do we define the federal program? By reference to the Indian Health Care Improvement Act. Now we're going in a circle. The Indian Health Care Improvement Act authorizes appropriations and provides a mechanism for billing third-party payers. And the agency mixes those two together to provide the wonderful program that the Indian Health Service does provide when it's not contracted by a tribe. It's that program, no more nor less. We're not seeking to expend any other revenues besides Medicare, Medicaid, and private insurance. What's interesting about this case, Your Honor, is that the court below actually gave the right standard but the wrong answer. On page 3 of the court's opinion, the court asks, and this is on page 8 of the excerpts of record, the court says, it would be unreasonable to construe this program, the program that's being contracted by the tribe, as anything other than the program IHS would be charged with operating absent and is the contract. I couldn't agree more. It would be unreasonable. What's unreasonable is to construe the tribe's contracted program as less than what IHS would be operating. It absolutely cannot be denied that IHS is operating a program that is funded both with appropriated dollars and thanks to the Indian Health Care Improvement Act, third-party revenues as well. And the tribe seeks to operate the same program. I do want to go back when I mentioned earlier how the agency does rely on these other resources outside the Indian Health Service for its overhead. If the tribe can't reach those, can't receive a comparable sum of money to replicate those resources, it's a zero-sum game. The tribe has to take the money, has to divert money out of the third-party revenues to make up the shortfall, to pay for those services. This is alleged in the complaint that this actually happened with the San Carlos Apache tribe. Apparently it was considered a fiction or a hypothetical in one of the other cases. It's not a hypothetical here. It's alleged this 12B6 motion had to be accepted as true. Do you want to say anything about 5326, which the district court also relied on, I think? Well, yes. Thank you for asking me the question, Your Honor. 5326 is an odd statute, as I'm sure you're aware. It's actually an appropriations rider. It was enacted by appropriations rider, not by the committees that were balancing this language and trying to match it with the rest of the self-determination. Appropriations rider enacted in response to the 10th Circus decision in Raymond, Navajo v. Lujan. And the problem in that case is that the overhead associated with two small state contracts had been allocated over to the BIA, the sister agency of IHS. And that's what Congress wanted to forbid. You can't take the overhead allocable to these little contracts that have nothing to do with the BIA, even if they're related programs, it's a different contract, and shove them onto the BIA and make the BIA pay the freight. That's not what's happening here. These services are being funded directly under the contract. The contract requires through 5325M1 that the money be spent under the contract. So I appreciate the judge's focus on the term directly attributable, but the analysis is wrong for two reasons. First, directly attributable has to be understood in the context in which that statute was adopted, which was the misallocation of overhead costs from these two little contracts over to the BIA. If you want to look at the judge's analysis of directly attributable versus attributable, look at what the judge said about the savings provision in the act. The judge says, look at the savings provision in the act. It uses the word attributable in 5325A4. What could be more directly, immediately attributable to the contract than savings under the contract? I mean, it is immediate. There is no space there, and yet the judge said, oh, no, that's just attributable. It has to be tighter than that, more directly attributable. We submit that that analysis doesn't hold. I'd like to reserve the balance of my time, if I may. Yes. Thank you. Very good. Let's hear from counsel for the government. Yes, please proceed whenever you're ready. You're muted, I think. We definitely cannot hear you. May I watch him from here? Sure. Oh, yes, of course. Sorry about that, Your Honor. I was on mute. Yep. May it please the Court, I'm John Capel from the Justice Department, representing the Apollese Secretary of HHS, Director of IHS in the United States, in this case involving contract support costs under the Indian Self-Determination and Education Assistance Act, known as ISTA. As the D.C. Circuit said in the Swinomish case, when the Act speaks of contract support costs, it does not mention money received from third parties like insurance providers. Instead, the Act says reimbursements for contract support costs cover activities that ensure compliance with the terms of the contract conducted by the tribe as a contract. Thus, the scope of contract support costs is limited to those under one emphasis of the Court's contract, the one between the contractor, the tribe, and the contracting agency. Counsel, you're focusing, or the D.C. Circuit, rather, focused on the use of the term the contract. I guess I find more helpful that the part of the statute that talks about the federal program, because it seems to me your opponent is right, that there can't be any dispute that the money that's being captured from these third-party payers and then, you know, necessarily used to carry out the provide health service, it's certainly part of the federal program. It's not part of some other program, right? So I just, I mean, the second part of that phrase, that is the subject of the contract, yes, that's trying to generally identify what federal program we're talking about, but nobody, there's no fight over that. So help me understand why you think that language is as clear as the D.C. Circuit said it was. Well, Your Honor, the D.C. Circuit had an answer to that point as well. And what it said was, if you take the plaintiff's theory of the scope of the federal program to its logical conclusion, Indian Health Service would be on the line for unlimited contract support costs based on the unlimited sources of outside-the-contract funding available to a tribe. That's not what the Act requires. And that's really, that is the heart of the dispute here. The plaintiffs are arguing for a, what they call a parity principle between IHS and the tribes, but that parity principle only applies to funds that are received under the contract, i.e., the secretarial amount. It does not apply to third-party funds that constitute program income. The statute makes clear that program income is a supplement to the contract, and it's not actually part of it. That's what both Sections 5325M and 5388J of the ISTA establish. And the reason that Congress did it, that Congress set up the system this way was because it was concerned with the funds that are provided under the contract. And that is what CSC contract support costs go for. Now, with respect to third-party funds, it's crucial that the tribes can do much more and have done much more with the funding than the Indian Health Service does. First of all, the tribes are free to bill third parties generally, non-beneficiaries. They are able to take non-tribal beneficiaries and charge them and then plow that money back into the program and also gain additional funds, additional third-party funds on that program income. And they can use that for much more than the IHS does. Let me make sure I understand the point. Are you saying that the tribe could provide health services to non-tribal members who wouldn't have been eligible for services by IHS, capture money from third-party payers, and you're saying that's the issue that's posed here? Because why couldn't you just segregate out those funds then and say, well, you don't get contract support costs on that because that's not part of the federal program that we're talking about in the statute? Well, but, Your Honor, the point is that Congress created really a hard and fast distinction between the funds provided by IHS under the ISTA contract and third-party funding. That is the purpose of 5325M and 5388J, which make clear that the third-party funds are supplemental to the funds provided by IHS. May I ask you, how did IHS use the income funds, the third-party income funds? Yes, Your Honor. IHS uses the income funds to provide additional services, to also pay for administrative costs, and to do the things that are allowed under Section, I believe it's 25 U.S.C. 1641C, which is the Indian Health Care Improvement Act provision that discusses the use of these third-party funding. It's not limited simply to providing additional health care services. It's not limited that way for either IHS or for the tribe. Both IHS and the tribe can use the third-party funds for more general purposes, like the 5325M says the general purposes of the contract. And that embraces things like improving facilities and just paying for general costs that are associated with the program. The cardinal point there is that, again, the tribes can do much more with the funds. They are allowed to provide services to non-Indian beneficiaries essentially at will. They have to recoup those funds, but it's in their interest to do so, and they do, and they use those funds. They can use those funds, again, to provide many more services and also to do things that IHS can't do, like build, construct additional facilities. And so this actually, the scheme makes sense from that standpoint. The program income is really, from the tribe's standpoint, it is an additional benefit that allows them to expand the services under the program and to basically to expand the program. But Congress did not intend in the ISDA to subsidize the expanded program with contract support costs. Those costs are only directed to the funds provided by IHS under the contract. Council, let me ask a practical question. An individual shows up at the San Carlos tribe for the provision of medical services. The individual has either through access or Medicare expansion or maybe even they have a supplemental insurance program, and they receive the services. An identical individual goes to a tribe, goes to an Indian health service facility that is not part of a tribal-administered health program and receives exactly the same medical services. And this individual has exactly the same benefits as the person who went to San Carlos. Is the government's position that the government gets to keep the third-party reimbursements in the case of IHS but not in the case of the tribe? Well, no, Your Honor, because, again, there's no parallel. In your hypothetical regarding IHS, if the person is a non-beneficiary, basically outside of very limited circumstances, IHS cannot provide services to that person. These two individuals in my hypothetical are in exactly the same position. Forget whether they're beneficiaries or not. Maybe they're both tribal members, one of the San Carlos nation and one of the Navajo. And these individuals with the same backup collateral coverage under access or private insurance appears and receives, as they're entitled to, medical services in these two independent places. Is it the government's position that it gets to keep the third-party reimbursement while the tribe cannot and that the government has no responsibility to leaven the situation out? Well, no, Your Honor. The tribe gets to keep the third-party funds, as does the government. And they have essentially the same obligations to then to continue to use those funds for purposes under the purposes of the contract. So, there really is no disparity there. The program works the same way for the government and the tribes with respect to third-party income and the expenditure of that income. But, again, the key point is that the government is much more limited in what it does and what it can do under the program, under the Indian Health Care Improvement Act, than the tribes are. The government really can't, as I've emphasized, it can't even treat the non-Indian beneficiaries unless the tribe asks it to and it determines that that won't diminish the services to the tribe. But there's no such restriction on Indian tribes. The tribes are free, and as they have done quite properly and sensibly, they are free to maximize their income and to expand their program under the ISTA. But, again, Congress, San Carlos, Apache, let's see, should be liberally constricted to the benefit of the contractor to transfer the funding and following related functions. How does that clause fit into your analysis? You're talking about the canon. You were talking about the Indian canon. There's a clause in the contract that's very similar. It is similar, Your Honor, and we believe that is essentially a restatement of the canon, and it doesn't go beyond the canon. It requires the same element of ambiguity for the canon to kick in that the statute does. Well, it seems to be very affirmative. It says the contract shall be liberally construed. Well, yes, again, and to the extent that there are ambiguities in the contract, it must be liberally construed in favor of the tribe. But the key point is that there are no, there are ambiguities under either the contract or under the statute, and the statute, I'd emphasize, doesn't require any particular formula for contract support costs, and this case, it is supposed to be out about contract support costs are supposed to address specific explicit costs. The tribe does not make any claim that it has not gotten specific direct or indirect costs. Instead, it has an abstract theory of the statute correctly rejected by the D.C. Circuit in Swinomish that basically allows contract support costs on third-party funds, which are treated as supplemental income under the ISTA, and that is not consistent with the language of the statute, and it is contrary to the clear mandate of the statute. And if there are no further questions, I would just urge this court to agree with the D.C. Circuit and affirm the judgment of the district court. Okay. Thank you, Your Honor. Thank you, Counsel. We have about three minutes for a vote. Thank you, Your Honors, and thank you, Mr. Koppel. The discussion today about services to non-Indians, to non-beneficiaries, this is completely out of left field and, in any event, has nothing to do with the contract today. We know what the contract is about. This contract is about serving only Indians, and it's about Medicare, Medicaid, private insurance, and the contract health service program. It's not about serving non-Indian people, nor is it about serving individuals with tribal resources. For instance, if you have a tribe that is blessed to have gaming revenues and can supplement the program with tribal revenues and enlarge the program, it's a wonderful thing. We're not talking about contract support costs on those kinds of enhancements. Call them revenues, whatever one wants to call them. That's not part of the federal program defined in the Indian Health Care Improvement Act. We can only go that far. We want to be that far, but we do not want to go further. So if my friend is talking about revenues from services provided to others or sources of monies that are coming from other grants, appropriations from a tribal treasury, contracts with a state, those are all wonderful, but that's not the business of the Indian Self-Determination Act. The federal program under the Indian Self-Determination Act is focused strictly on the program defined, and we accept those limitations in this case. We do not seek an expansion of the federal program beyond the scope of the Indian Health Care Improvement Act. Can I ask, just looking at that language in 5320? Excuse me, Your Honor. I'm sorry. Oh, that's fine. We can hear you just fine. But the D.C. Circuit's read was that the phrase, the operation of the federal program is a subject of the contract from 5325, that if we opened it up in the way that you're advocating, then what in the language of that provision would exclude the revenues, say, from gaming or for some other grant? Why wouldn't those also be in the operation of the federal program? That's what we're saying? You're saying, no, we're using these for different purposes. I apologize, Your Honor. I was agreeing because it says federal, a federal program. It's not a tribal program. For all I know, San Carlos Apache Tribe may have a supplemental tribal program that they're doing wonderful things with. But that's not this act. The contract support costs the government is required to pay are for the federal program and the federal program only, not the federal program enhanced by anything else. So we accept that limitation. And if a tribe has enhancements from other sources that it adds to provide greater health care, that's wonderful, but the government has no obligation to pay contract support costs under the contract between the government and the tribe. So how do you account for that, through some sort of ratio or something? You do. It's exactly what it is, Your Honor. It's a ratio. So the indirect costs are pooled together in what's called an indirect cost pool. That's the numerator. I'm running out of time, but may I explain? Of course, yes, please. And then all of the programs that are being supported with that overhead are in the denominator. So you'll have the self-determination contract over here. You'll have maybe some state grants. Maybe we have a blessed tribe that has gaming revenues. That overhead is then divided, produces a ratio, and each of those entities in the denominator carries its share. So if the Indian Health Service is one-half of that whole denominator, it shoulders one-half of the overhead. If the tribal treasury funds that were contributed is one-quarter of the denominator, it's one-quarter of the numerator, one-quarter of the overhead. It's an allocation system. That's exactly what we were talking about earlier and how 5326 speaks to that system and making sure that the overhead allocable to those two state contracts doesn't get shouldered onto the BIA or the IHS. It sticks to itself. The last thing I wanted to say, Your Honors, is you were focused on the provision in 5329C, which was interpreted by the Supreme Court in the Salazar case definitively to say that the government's position can only be sustained if it's clearly required by the statutory text. I think our interpretation harmonizes the statute. It provides that the activities are funded so long as they're part of the federal program and are supported by contracts of poor cost, and we respectfully ask that Your Honors reverse the district court and remand the matter for trial. Okay. Thank you very much. Thanks to both counsel for your arguments. The case just argued is submitted, and we are adjourned for the day. All rise.
judges: HAWKINS, PAEZ, WATFORD